**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**C. MICHAEL RIDDELL, M.D.**                                                                 **PLAINTIFF**

**v.**                                         **NO. 4:05-CV-140 GTE**

**UNUM LIFE INSURANCE COMPANY OF AMERICA**
**and TENET HEALTHCARE CORPORATION**                                       **DEFENDANTS**

**ORDER**

**I.  Background**

Plaintiff Riddell is a physician who was employed by Defendant Tenet Healthcare Corporation ("Tenet"). In 1996, while working for Tenet, Plaintiff applied for and was issued the Long Term Disability Policy ("Policy") in question. The Policy was issued to Tenet by Defendant Unum Life Insurance Company of America ("Unum") pursuant to an employee benefit plan.

Plaintiff was diagnosed with multiple schlerosis in February 1998, and applied for long-term disability benefits later that year. Defendant Unum approved his claim for disability benefits under the Policy, and Plaintiff began receiving monthly benefit payments. Plaintiff has since been able to return to part-time work as a medical consultant for the Arkansas Department of Health. In this capacity, Plaintiff is paid biweekly based on an hourly wage assuming thirty-six (36) hours per week, plus an additional "certified physician pay", which is allegedly paid as a bonus to physicians who elect to maintain board certification.

In 2004, Defendant Unum notified Plaintiff that its accounting department had "calculated an overpayment on Dr. Riddell's claim in the amount of $38,014.77 for the period of November 1, 2002 through December 31, 2003," and that it would withhold $2,670 monthly from his benefit payments. Plaintiff appealed this determination by letter on September 27, 2004 arguing that Unum erroneously included his certified physician pay in its calculation of disability

- 1 -

benefits because the Policy excludes from "monthly earnings" any income derived from bonuses. Defendant Unum denied Plaintiff's appeal on October 12, 2004 stating: "The monthly earnings definition that you described is the definition per the contract with the employer, which is defined by the Policyholder. Once an insured seeks employment with another employer, the earnings are defined differently than they were with the Policyholder, and all return to work earnings are included when calculating the monthly benefit." (AR1226-27).

**II. Discussion**

District courts review an ERISA plan administrator's decision to terminate benefits *de novo*, unless the benefits plan vests the administrator with the discretionary authority to determine benefits eligibility or to interpret the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 957-58 (1989). Where the plan administrator has such discretionary powers, courts review a denial-of-benefits claim with a deferential eye, overturning the administrator's decision only if it was "arbitrary and capricious". *See*, *e.g.*, *Lickteig v. Business Men's Assur. Co. of America*, 61 F.3d 579, 583 (8th Cir. 1995).

It is undisputed that the Policy here vests Defendant Unum with the discretionary authority to determine eligibility of benefits and to interpret the terms of the Policy. Accordingly, the Court will apply the "arbitrary and capricious" standard to the issues at bar.

The "arbitrary and capricious" standard examines "whether the decision to deny [] benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000). The Eighth Circuit Court emphasized that "[p]rovided the decision 'is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could

have been made.'" *Id.* (*quoting Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997)).

The parties do not dispute that Plaintiff is disabled and is entitled to disability payments. The issue in dispute is whether Plaintiff's "certified physician pay" should be included in the calculation of Plaintiff's monthly benefits payments. The Court will review the formula set out in the Policy for calculating benefits.

The Policy first determines the amount of the employee's "monthly payment" as follows:

1. Multiply your monthly earnings by 66.6667%
2. The maximum monthly benefit is $13,333.
3. Compare the answer from Item 1 with the maximum monthly benefit. The lesser of these two amounts is your gross disability payment.
4. Subtract from your gross disability payment any deductible sources of income.

The amount figured in Item 4 is your monthly payment.

(AR1043). The disabled employee is not necessarily entitled to the entire sum of the "monthly payment". To determine what portion of the "monthly payment" that is to be paid to the disabled employee, the Policy compares the amount of the employee's "monthly disability earnings" against his "indexed monthly earnings":

(A) "if you are disabled and your monthly disability earnings, if any, are less than 20% of your indexed monthly earnings";

(B) [i]f you are disabled and your monthly disability earnings are from 20% through 80% of your indexed monthly earnings";

(C) "[d]uring the first 24 months of disability payments, if your monthly disability earnings exceed 80% of your indexed monthly earnings"; or

(D) "[b]eyond 24 months of disability payments, if your monthly disability earnings exceed 60% of your indexed monthly earnings".

(AR1040-41). Under condition (A), the disabled employee is entitled to the full "monthly

payment". Under condition (B), the employee is entitled to a portion of the "monthly payment", while the employee is entitled to none of the "monthly payment" under conditions (C) and (D).

The policy defines "indexed monthly earnings" and "disability earnings" as follows:

> ***INDEXED MONTHLY EARNINGS*** means your monthly earnings adjusted on each anniversary of benefit payments by the lessor of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.
>
> ***DISABILITY EARNINGS*** means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your ***maximum capacity*** and based on restrictions and limitations.

(AR1044, 1039) (emphasis in original). The Policy also defines "monthly earnings":

> "Monthly Earnings" means your earnings from your Employer determined by dividing your annual benefits pay by 12. Your annual benefits pay is calculated by multiplying your benefits rate by 2,080 hours (equivalent to 40 hours per week) regardless of the number of hours you are regularly scheduled to work. Your benefits rate is your hourly rate, frozen each year just prior to the annual enrollment period. . . . Monthly earnings includes your total income before taxes and any deductions made for pre-tax contributions to a qualified deferred compensation plan, Section 125 plan, or flexible spending account. It does not include income received from commissions, bonuses, overtime pay, shift differential, any other extra compensation, or income received from sources other than your Employer.

(AR1042).

On the face of the Policy's language, "monthly earnings" excludes income from bonuses while "disability earnings" does not. The definition of "disability earnings" makes no distinction between salary income and bonus income. The exclusion for bonus income applies only to "monthly earnings". That exclusion could apply to "disability earnings" if the Court were to find that the word "earnings" is synonymous with "monthly earnings". However, the Policy is silent in this regard, as it provides no definition for "earnings", nor does the Policy draw a connection

- 4 -

between the definition of "earnings" and the definition of "monthly earnings". Indeed, it appears that the Policy looks at "monthly earnings" as a representation of the employee's pre-disability salary, minus commissions, bonuses, overtime, or other income, rather than as an general definition for the word "earnings". Defendant makes the argument as follows:

> According to a clear reading of the policy, two separate definitions are applied depending on whether or not the insured is disabled but not working, or if the insured is disabled and working. In the first instance, the definition of monthly earnings applies, which admittedly exclude bonuses. In the second instance, the definition of disability earnings applies, which includes earnings the insured received while disabled and working. If the same analysis was to apply regardless of whether or not the insured was working, there would be no need for the separate sections in the policy which specifically address how the calculations are to be made in each instance.

(Defendant's Response Brief to Plaintiff's Motion for Judgment, p. 4).

The Court concludes that Defendant Unum's interpretation of the word "earnings", as including income from all sources, is supported by a reasonable explanation and is not arbitrary and capricious.

The Court notes that Defendant Unum reasoning for its determination, as explained in its letters to Plaintiff, appear to confuse the matter. In the letter dated October 12, 2004, Defendant Unum argues to Plaintiff that the Policy provides for one formula to be applied when a disabled employee returns to work for the Policyholder, and another formula when the disabled employee returns to work for another employer. The Policy makes no such distinction, but this has no impact on the Court's conclusion.  The Court upholds Defendant Unum's decision because the Policy's language supports the Defendant's decision, not because the Policy supports the Defendant's stated rationale.

IT IS THEREFORE ORDERED THAT the Plaintiff's Motion for Judgment on the

Record (Dkt. #11) shall be, and it is hereby, DENIED.

IT IS FURTHER ORDERED THAT the Defendants' Motion for Judgment (Dkt. #14) shall be, and it is hereby, GRANTED.

Dated this 15th day of December, 2005.

_/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE